WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
BETSY C. MANIFOLD (182450)
750 B Street, Suite 2770
San Diego, CA  92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599

THE LAW OFFICES OF JOHN M. KELSON
JOHN M. KELSON (75462)
483 Ninth Street, Suite 200
Oakland, CA  94607
Telephone:  (510) 465-1326
Facsimile:   (510) 465-0871

JERRY K. CIMMET (33731)
Attorney at Law
177 Bovet Road, Suite 600
San Mateo, CA  94402
Telephone:  (650) 866-4700

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR DAWSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     vs.<br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and PAC-12 CONFERENCE,<br><br>     Defendants | Case No.<br><br>**CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**<br><br>**DEMAND FOR JURY TRIAL** |

The Representative Plaintiff   LAMAR DAWSON ("Plaintiff"), by and through his attorneys, for his complaint, makes the following allegations upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     This is a class/collective action, seeking unpaid wages, including unpaid overtime compensation and interest thereon, required minimum wage payments, waiting time penalties, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") Sections 6 and 7, 29 U.S.C. §§ 206 and 207.  This action further invokes the supplemental jurisdiction of this Court to consider claims arising under California law (*e.g*., Title 8 of the California Code of Regulations, California Labor Code sections 200-204, inclusive, 216-218.6, 223, 226, 510, 1174, 1194, 1194.2, 1197 and California Business and Professions Code sections 17200, *et seq*., and Code of Civil Procedure section 1021.5).

2.     Plaintiff brings this action on behalf of himself and all other members of the FLSA Class and the California Class and Subclasses thereof defined herein below (together the "Classes") who are, or have been, regulated and/or controlled in their employment, and the compensation therefor, as student athletes engaged on the football field by the Defendants NATIONAL   COLLEGIATE   ATHLETIC   ASSOCIATON   ("NCAA")   and   PAC-12 CONFERENCE ("PAC-12") (hereinafter, collectively "Defendants") to the substantial economic benefit of said Defendants.

3.     The "California Class Period" is designated as the time commencing from four (4) years before the date this action was filed through the date of final judgment herein, based upon the allegations that the violations of California's wage and hour laws, as described more fully below, have been ongoing since that time.  The "FLSA Class Period" is designated as the time commencing from three (3) years before the date this action was filed through the date of final judgment herein, based upon the allegations that the willful violations of the FLSA, as described more fully below, have been ongoing since at least this period of time.  During the Class Periods, Defendants have had a consistent policy of: (1) permitting, encouraging, and/or requiring student

athletes, who are subject to their jurisdiction, including Plaintiff and members of the Classes, to work in excess of eight (8) hours per day and in excess of forty (40) hours per week without paying them overtime compensation as required by the FLSA and California's wage and hour laws; (2) failing to pay Plaintiff and California/FLSA Class Members required minimum wage payments for all applicable pay periods; (3) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to Plaintiff and the California Class Members whose employment with Defendants terminated; (4) unlawfully underpaying Plaintiff and the California Class Members all wages due and owing them in applicable pay periods; (5) unlawfully failing to pay Plaintiff and the California Class Members all wages due and owing them in applicable pay periods on a timely basis; (6) willfully failing to provide Plaintiff and the California Class Members with accurate semi-monthly itemized wage statements of the total number of hours each of them worked, the applicable deductions and the applicable hourly rates in effect during the relevant pay period; and (7) violating the provisions of the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*, by Defendants' repeated violations of the California Labor Code as herein below detailed.

## INTRODUCTION

4.      The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter referred to as "the Act" or the "FLSA") provides for minimum standards for both wages and overtime entitlement, and details administrative procedures by which covered work time must be compensated.  The enactment of the provisions of the FLSA provides the Federal Courts with substantial authority to stamp out abuses of child labor, equal pay, portal-to-portal activities as well as the overtime and minimum wage pay provisions at issue in this Complaint.

5.      According to Congressional findings, the existence of labor conditions detrimental to the maintenance of the minimum standard of living for workers engenders unfair business competition, labor disputes, barriers to commerce and the free flow of goods in commerce, and interferes with the orderly and fair marketing of goods.

6.      California's Labor Code and Industrial Welfare Commission ("IWC") Wage Orders provide even more expansive protection to hourly workers, including, but not necessarily

1   limited to, entitlements to overtime pay and work performed beyond eight hours per day,

2   protection against improper wage deductions and substantial penalties for the denial of rest and

3   meal periods.

4         7.    Defendants have regulated and controlled and continue to regulate and control the

5   employment of student athletes engaged in playing football at the universities and colleges who

6   are participating members of said Defendants.  They are "the only game in town" when it comes

7   to prescribing the terms and conditions under which student athletes perform services and

8   compensating student athletes for their services.

9         8.    College football is a big business for the NCAA's top-tier Division I Football

10   Bowl Subdivision ("FBS") teams and for the athletes who play football for those teams.  The

11   NCAA itself says that "[t]he most recent estimate from the NCAA research staff is that college

12   athletics programs annually generate about US\$6.1 billion."  *See* Randy R. Grant, John C.

13   Leadley, and Zenon X. Zygmont THE ECONOMICS OF INTERCOLLEGIATE SPORTS ("EIS") at 66

14   n.17 (2d ed. 2015).  In particular, Division I FBS football teams generate and have generated for

15   Defendants billions of dollars a year in revenue through the work performed by the athletes who

16   play football there.  Not a single dollar of that enormous revenue would exist if it were not for

17   the efforts of the athletes themselves.  In so doing, Defendants have controlled and regulated the

18   employment of student athletes who have not met, and currently do not meet, any test for

19   exemption from the payment of minimum wage, overtime wages and other wage entitlements.

20         9.    The NCAA's top-tier Division I FBS football teams structure and conduct their

21   football operations like any other major business enterprise. For example, Defendant PAC-12,

22   comprised entirely by institutions with Division I FBS football teams, created, owns, and

23   operates the "PAC-12 Network," a fully-integrated multi-media company that includes a national

24   television network, six regional networks, and a digital network.  Unlike other conferences, the

25   PAC-12 owns 100 percent of its television networks and reports income of \$116.6 million in

26   total income from the PAC-12 Networks in 2014-2015, up 5% from a year earlier. See

27   http://www.cbssports.com/college-football/news/pac-12-falls-behind-sec-in-money-even-with-

28   commissioner-at-4-million-in-salary/.  PAC-12 also sells subscriptions to TV Everywhere

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Rights, allowing fans to access PAC-12 televised football games on a digital device anywhere around the world.

10.     Despite actual knowledge of these facts and legal mandates, Defendants, to their substantial economic advantage, have ignored the wage entitlements of Plaintiff and all other Class members by: (1) permitting, encouraging, and/or requiring student athletes who are subject to their jurisdiction, including Plaintiff and members of the Classes, to work in excess of eight (8) hours per day, in excess of forty (40) hours per week, and on six (6) or more consecutive days per week without paying them overtime compensation as required by the FLSA and California's wage and hour laws; (2) failing to pay Plaintiff and California/FLSA Class Members required minimum wage payments for all applicable pay periods; (3) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to Plaintiff and the California Class Members whose employment with Defendants terminated; (4) unlawfully underpaying Plaintiff and the California Class Members all wages due and owing them in applicable pay periods; (5) unlawfully failing to pay Plaintiff and the California Class Members all wages due and owing them in applicable pay periods on a timely basis; (6) willfully failing to provide Plaintiff and the California Class Members with accurate semi-monthly itemized wage statements of the total number of hours each of them worked, the applicable deductions and the applicable hourly rates in effect during the relevant pay period; and (7) violating the provisions of the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*,  by Defendants' repeated violations of the California Labor Code as herein below detailed.

11.     Plaintiff is informed and believes and, based thereon, alleges that Defendants knew of these facts and legal mandates throughout the Class Periods, yet, nonetheless, repeatedly authorized and/or ratified the continuing violation of the laws alleged herein.

12.     In sum, despite Defendants' knowledge of the entitlements of Plaintiff and the Classes to premium (overtime) pay, as well as required minimum wage payments, Defendants failed to provide the same to Plaintiff and the members of the Classes in violation of the FLSA and California Labor Law, Industrial Welfare Commission Orders and Title 8 of the California

1  Code of Regulations and California Unfair Competition Law.  This class/collection action is

2  brought to redress and end this long-time pattern of unlawful conduct.

3  ## JURISDICTION AND VENUE

4  13.    This Court has jurisdiction of this action pursuant to the provisions of the Fair

5  Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, including under 29 U.S.C. §§

6  207, 216, and 217.   This Court also has jurisdiction in light of the existence of a controversy

7  arising under the laws of the United States, 28 U.S.C. § 1331, and supplemental jurisdiction to

8  consider claims arising under California state law, pursuant to 28 U.S.C. § 1367.

9  14.    Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §

10  1391.  Defendant PAC-12 maintains offices in the Northern District of California and transacts

11  business, has agents, and is otherwise within this Court's jurisdiction for purposes of service of

12  process.  The unlawful acts alleged herein have had a direct effect on Plaintiff and the California

13  Class Members who have been and are situated within the State of California and within this

14  judicial district.    Defendant NCAA, together with Defendant PAC-12, has regulated and

15  controlled the employment of Plaintiff and other Class Members as student athletes in this

16  judicial district as well as throughout the State of California.

17  **PLAINTIFF**

18  15.    Plaintiff LAMAR DAWSON ("Plaintiff") is an adult individual and was, from

19  June 2011 to December 2015 during the Class Periods identified herein, employed jointly by

20  Defendants as a student athlete playing football while he attended the University of Southern

21  California, a Division I FBS member of the Defendant PAC-12.

22  16.    In said position, Plaintiff was repeatedly paid a substandard wage insofar as he

23  was denied full pay for all hours worked, including overtime pay, and was frequently permitted

24  to work without receiving required minimum wage payments.  Plaintiff is informed and believes,

25  and based thereon, alleges that this conduct of Defendants is and was commonplace at the

26  locations regulated and controlled by Defendants.

27  17.    As used throughout this Complaint, the terms "Class Members" and/or "Classes"

28  refer to the named Plaintiff herein as well as each and every person eligible for membership in

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1    the Classes and/or Subclasses thereof, as further described and defined below.

2        18.    At all times herein relevant, Plaintiff was, during the Class Periods, and now is, a

3    member of each of the Classes and/or Subclasses thereof further described and defined herein.

4    **DEFENDANTS**

5        19.    At all times during the Class Periods, Defendant NCAA was, and is, so it

6    describes itself, an "unincorporated not-for-profit educational organization founded in 1906,"

7    and maintains its principal place of business in Indianapolis, Indiana.  The NCAA further states

8    that it "is the organization through which the colleges and universities of the nation speak and act

9    on athletic matters at the national level."   It is comprised of more than 1,100 colleges and

10   universities, and 23 Division I football conferences, including the Defendant PAC-12, located

11   throughout the United States.

12       20.    The NCAA includes more than 1,100 active member schools organized into three

13   Divisions.  Division I is comprised of approximately 351 schools, of which approximately 253

14   have Division I football programs, including approximately 128 schools with Division I FBS

15   programs.    Divisions II and III include schools with much less extensive or no football

16   programs.  As a practical matter, any academic institution that wishes to participate in any

17   meaningful way in the highest and most popular level of college football must maintain

18   membership in the NCAA and abide by the Division I rules and regulations promulgated by the

19   NCAA and its members, including the rules and regulations governing work conditions for

20   student athletes in Division I FBS programs such as Plaintiff and the other members of the

21   Classes.  There is no practical alternative to Division I FBS membership for any academic

22   institution that wishes to participate at the highest level of college football and share in the

23   revenues generated thereby.

24       21.    Defendant PAC-12 is an unincorporated association, with its principal place of

25   business located in this Judicial District at 360 Third Street, Third Floor, San Francisco, CA

26   94107.   The PAC-12 is a multi-sport collegiate athletic conference, and a formal "conference

27   member" of Defendant NCAA's Division I FBS.

28       22.    The PAC-12's "2015-2016 Handbook," for example, states that the PAC-12 was

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

organized for purposes including: "[t]o provide its members with a jointly governed body for sponsoring, supervising and regulating intercollegiate athletics as a conference member of the National Collegiate Athletics Association ('NCAA') in accordance with the principles, policies, constitution and bylaws of the NCAA" and "[t]o assist its members in funding and promoting their intercollegiate athletics programs."

23.     In its 2014 IRS Form 990, the PAC-12 identified itself as a tax-exempt organization pursuant to Section 501c(3) of the U.S. Internal Revenue Code, and stated that, for its fiscal year ending June 30, 2014, it obtained gross revenues of $374,019,275.  According to CBS Sports, the PAC-12 generated a conference-record $439 million in revenue, up 17 percent in 2015.  *See Pac-12 Falls Behind SEC in Money Even with Commissioner at $4 Million in Salary*, CBSSPORTS.COM,  http://www.cbssports.com/college-football/news/pac-12-falls-behind-sec-in-money-even-with-commissioner-at-4-million-in-salary/  (last  visited  Sept.  26, 2016).  Further as reported by GuideStar.org (an organization that monitors non-profits), the PAC-12 has $113,315,196 in assets, which includes $19,360,432 in cash and cash equivalents.  In 2015, the PAC-12 also earned $11.7 million, up 23% from a year earlier, on intellectual property rights, licensing and sponsorship sales.  *Id.*  The PAC-12's revenues in 2014-2015 included $298.6 million from television rights and $80.1 million from postseason bowls.  *Id.*  The PAC-12 only distributes about 67-69% of its revenues to members, while other conferences distribute to its members approximately 80 to 95%.  *Id.*

24.     Plaintiff is informed and believes and, on that basis, alleges that Defendants have, at all times during the Class Periods, directly and/or indirectly employed and/or exercised control and regulation over the wages, hours and working conditions of Plaintiff and the Class Members and continue to do so to date.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the following Classes and/or Subclasses thereof:

///

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

**FLSA Class**:

26.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendant NCAA to the substantial economic benefit of said Defendant in any Division I FBS football team in the United States within the applicable statutory periods.

**California Class**:

27.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods.

**California Wage Sub-Class**:

28.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who are, or have been, entitled to overtime and/or minimum wage payments from said Defendants.

**California Waiting Time/Penalties Sub-Class**:

29.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who were and are entitled to late payment or waiting time penalties from said Defendants arising after the termination of their employment.

**California Underpayment/Penalties Sub-Class**:

30.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who were and

are underpaid by said Defendants for applicable pay periods during their employment.

### California Untimely Payment/Penalties Sub-Class:

31.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who were and are untimely paid by said Defendants for applicable pay periods during their employment.

### California Wage Statement/Penalties Sub-Class:

32.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who were and are not provided with itemized wage statements said Defendants for applicable pay periods during their employment.

### California Unfair Business Practices Sub-Class:

33.     All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC-12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods, and who were and are subjected to Defendants' violations of the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*. during their employment.  Excluded from the Class are the following: Defendants; any parent, subsidiary, affiliate, or controlled person of Defendants; and the officers, directors or managing agents of any of the same.

34.     This action has been brought and may properly be maintained as a class/collective action under Federal Rules of Civil Procedure, rule ("Fed. R. Civ. P.") 23 and 29 U.S.C. § 216 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

    a.     Numerosity.  A class action is the only available method for the fair and

efficient adjudication of this controversy.  The members of the classes are so numerous that joinder of all members is impractical, if not impossible, insofar as Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members exceeds hundreds, if not thousands, of individuals.  Membership in the Classes will be determined upon analysis of employee records, among other records, maintained by Defendants.

   b. <u>Commonality</u>:  Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed. R. Civ. P. 23(b)(3) and 29 U.S.C. § 216(b).  These common questions include, but are not necessarily limited to:

   i. Whether Plaintiff and the other members of the Classes were employed by Defendants, or either of them, during the Class Periods;

   ii. Whether Defendants (or either of them) violated the FLSA and/or California laws by failing to pay overtime compensation to members of the Classes who worked in excess of forty (40) hours per week;

   iii. Whether Defendants (or either of them) violated the FLSA and /or California laws by failing to pay required minimum wage payments to members of the Classes for all applicable pay periods;

   iv. Whether Defendants (or either of them) violated California IWC Wage Order Nos. 7-98, 7-2000, 7-2001 and California Labor Code section 510 by failing to pay overtime compensation to members of the California Class who worked in excess of forty (40) hours per week or eight (8) hours a day;

   v. Whether Defendants (or either of them) violated California IWC Wage Order Nos. 7-98, 7-2000, 7-2001 and California Labor Code section 510 by failing to pay overtime compensation to members of the California Class who worked on the seventh day of work in any one workweek;

   vi. Whether Defendants (or either of them) violated California

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Business and Professions Code section 17200 by failing to pay overtime compensation to members of the California Class who worked in excess of forty (40) hours per week and/or eight (8) hours a day;

vii.     Whether Defendants (or either of them) violated California Business and Professions Code section 17200 by failing to pay overtime compensation to members of the California Class who worked in excess of forty (40) hours per week and/or eight (8) hours a day;

viii.     Whether Defendants (or either of them) violated California Business and Professions Code section 17200 by failing to pay required minimum wage payments to members of the California Class for all applicable pay periods;

ix.     whether Defendants (or either of them) violated California Business and Professions Code section 17200 by violating other provisions of the California Labor Code, including but not limited to sections 1174, 226, and 203 thereof;

x.     Whether Defendants (or either of them) violated, and continue to violate, California Labor Code section 1174 by filing to keep accurate records of employees' hours of work;

xi.     Whether Defendants (or either of them) violated, and continue to violate, California Labor Code sections 201-203 by failing to pay overtime wages due and owing at the time Class Members' employment with Defendants terminated;

xii.     Whether Defendants (or either of them) violated, and continue to violate, California Labor Code section 558(a)(1) by underpaying Plaintiff and the California Class in any and all applicable pay periods;

xiii.     Whether Defendants (or either of them) violated, and continue to violate, California Labor Code section 204(a)(1) by untimely paying Plaintiff and the California Class in any and all applicable pay periods;

xiv.     Whether Defendants (or either of them) violated, and continue to violate, California Labor Code section 226 by failing to provide semi-monthly itemized wage statements to Class Members of total hours worked and all applicable hourly rates in effect

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1    during the pay period; and

2    xv.    Whether Plaintiff and members of the California Class are entitled

3    to "waiting time" penalties/wages pursuant to California Labor Code section 203.

4    c.    Typicality:  Plaintiff's claims are typical of the claims of all other member

5    of the Classes.  Plaintiff and all members of the Classes sustained injuries and damages arising

6    out of and caused by Defendants' common course of conduct in violation of state and federal

7    law, as alleged herein.

8    d.    Superiority of Class Action:  Since the damages suffered by individual

9    Class Members, while not inconsequential, may be relatively small in comparison to the

10   aggregate amount of damages suffered herein, the expense and burden of individual litigation by

11   each member makes, or may make, it impractical for Class Members to seek redress individually

12   for the wrongful conduct alleged herein.  Should separate actions be brought or be required to be

13   brought by each individual Class Member, the resulting multiplicity of lawsuits would cause

14   undue hardship and expense for the Court and the litigants.  The prosecution of separate actions

15   would also create a risk of inconsistent rulings, which might be dispositive of the interests of

16   other Class Members who are not parties to the adjudications and/or may substantially impede

17   their ability to adequately protect their interests.  Moreover, Plaintiff is informed and believes,

18   and based thereon alleges, that Defendants, in refusing to pay overtime to the FLSA Class

19   Members and the California Class Members, have acted and refused to act on grounds generally

20   applicable to all claims, thereby making appropriate injunctive and monetary relief for all

21   members of each class.  Consequently, class certification is proper under Fed. R. Civ. P. 23(b)(2)

22   and 29 U.S.C. § 216(b).

23   e.    Adequacy of Representation:  Plaintiff in this class action is an adequate

24   representative of the Classes, in that Plaintiff's claims are typical of those of the Classes and

25   Plaintiff has the same interests in the litigation of this case as the Class Members.  Plaintiff is

26   committed to vigorous prosecution of this case, and has retained competent counsel experienced

27   in class action litigation, like this, seeking to vindicate the rights of workers to the compensation

28   to which they are statutorily entitled.  Plaintiff is not subject to any individual defenses unique

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1  from those conceivably applicable to the Classes as a whole.   Plaintiff anticipates no

2  management difficulties in this litigation.

3  **COMMON FACTUAL ALLEGATIONS**

4  **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**

5      35.    Defendant NCAA was founded in 1905 by the presidents of 62 colleges and

6  universities in order to create a uniform set of rules to regulate intercollegiate football.  Today,

7  the association has more than 1,100 member schools and regulates intercollegiate athletic

8  competitions in approximately two dozen sports.   According to its current constitution, the

9  NCAA seeks to "initiate, stimulate and improve intercollegiate athletics programs for student-

10 athletes and to promote and develop educational leadership, physical fitness, athletics excellence

11 and athletics participation as a recreational pursuit."  2015-16 NCAA Division I Manual at 1.

12      36.    To achieve these goals, Defendant NCAA issues and enforces rules governing

13 athletic competitions among its member schools.  *Id*. at 4.  These rules are outlined in the

14 association's constitution and bylaws and cover a broad range of subjects, including in particular

15 rules and regulations which govern the conditions under which student athletes perform their

16 services (*i.e.*, work).  Among other things, the rules establish academic eligibility requirements

17 for student athletes, set forth guidelines and restrictions for recruiting high school athletes,

18 impose limits on the number of and size of athletic scholarships that each school may provide,

19 limit or curtail the types of remunerations that may be paid to student athletes, and regulate days,

20 hours, and conditions of practice and games.  *Id*. at 3-5.

21      37.    Since 1973, the NCAA's member schools have been organized into three

22 divisions – Divisions I, II, and III – based on the number and quality of opportunities that they

23 provide to participate in intercollegiate athletics.  Division I schools provide the greatest number

24 and highest quality of opportunities to participate in intercollegiate athletics because they

25 sponsor more sports teams and provide more financial aid to student athletes than schools in

26 Divisions II and III.  To qualify for membership in Division I, a school must sponsor a minimum

27 of fourteen varsity sports teams, including football, and distribute a baseline amount of financial

28 aid to its student athletes.  Roughly 350 of the NCAA's 1,100 schools currently compete in

Division I.  In 1978, for football only, Division I was subdivided into Division I-A (the principal football schools) and Division I-AA.  In 2006, Divisions 1-A and 1-AA were renamed Football Bowl Subdivision ("FBS") and Football Championship Subdivision ("FCS").  Different rules and requirements are imposed on FBS and FCS schools and participants in their football programs, including scholarship limitations and post-season play and also include economic differences, such as minimum paid attendance requirements for FBS schools.

38.    Economists have long recognized the 'value' of football players in Division I.  Economic professors at Linfield College and Western Oregon University (Randy R. Grant, John C. Leadley, and Zenon X. Zygmont) in THE ECONOMICS OF COLLEGIATE SPORTS ("EIS") created a chart of revenues and expenses generated by selected sports in 2010.  EIS at 170.  Out of all collegiate sport programs, only two programs generate positive net revenue – Men's Basketball $788,000 and Football $3,148,000.  Economists have also calculated the value of individual football players at Division I schools.   For example, economists Robert Brown and Todd Jewell calculated "that star players on the football team" at a Division-I institution "generates US$406,914 . . . in MRP per season."  *See* EIS at 168-69. "MRP" is defined as marginal revenue product and measures the increased revenue generated by one more unit of input. EIS at 97. Messieurs Grant, Leadley and Zygmont  in *EIS*  estimate that Marshawn Lynch contributed an estimated $800,000 in revenue to his school.  EIS at 169.   They also analyzed the "The Flutie effect."  Flutie, as Boston College's QB, gained national attention in the mid-1980s with a huge last minute upset in a nationally broadcast game.  The following year at Boston College, admissions and alumni donations to the university soared.  EIS at 168.

39.    NCAA Constitution Article 5.01.1 provides:  "All legislation of the Association that governs the conduct of the intercollegiate athletics programs of its member institutions shall be adopted by the membership in Convention assembled."  Further, NCAA Constitution Article 3.2.4.1 provides that members "agree to administer their athletics programs in accordance with the constitution, bylaws, and other legislation of the Association."

40.    NCAA Bylaw 15 sets forth "Financial Aid" rules, many of which impose restrictions on the amount and nature of, and method by which, payments of any kind may be

1   provided to student athletes.  NCAA Bylaw 15.1 provides that a student athlete may receive
2   remuneration on the basis of athletics ability, but such grant-in-aid remuneration is strictly
3   limited to "the value of his or her cost of attendance."  Under NCAA Bylaw 15.02.5, a full grant-
4   in-aid "consists of tuition and fees, room and board, books, and other expenses related to
5   attendance at the institution up to the cost of attendance."  An athlete may receive payments
6   beyond this amount only if such additional pay is unrelated to athletic ability; however, even
7   those amounts are strictly limited.  NCAA Bylaw 15.1 states that, "[a] student athlete shall not be
8   eligible to participate in intercollegiate athletics if he or she receives financial aid that exceeds
9   the value of the cost of attendance."

10          41.     Defendant NCAA also expressly states that the above-described ***financial aid***
11  ***remunerations***, which are awarded on the basis of athletic ability, ***are not to be considered***
12  ***payments for athletics skills to be performed by the student athlete that he or she may provide***
13  ***in rendering athletic services when playing on a participating member's sports team.***  As
14  provided by the express terms of NCAA Bylaw 12.01.04: "***A grant-in-aid administered by an***
15  ***educational institution is not considered to be pay or the promise of pay for athletics skill***,
16  provided it does not exceed the financial aid limitations set by the Association's members."
17  (Emphasis added).   Otherwise any payment to the student athlete for athletic services is
18  prohibited.   In this regard, Bylaw 12.1.2 states:

19
20          An individual loses amateur status and thus shall not be eligible for
            intercollegiate competition in a particular sport if the individual:
21          (a) Uses his or her athletics skill (directly or indirectly) for pay in any form in
            that sport;
22          (b) Accepts a promise of pay even if such pay is to be receivedfollowing
            completion of intercollegiate athletics participation;
23          (c ) Signs a contract or commitment of any kind to play professional athletics,
            regardless of its legal enforceability or any consideration received, except as
24          permitted in Bylaw 12.2.5.1;
            (d) Receives, directly or indirectly, a salary, reimbursementof expenses or any
25          other form of financial assistance from a professional sports organization based
            on athletics skill or participation, except as permittedby NCAA rules and
26          regulations;
            (e) Competes on any professional athletics team per Bylaw 12.02.11, even if no
27          pay or remuneration for expenses was received, except as permitted in Bylaw
28

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

12.2.3.2.1;
(f) After initial full-time collegiate enrollment, enters into a professional draft (see Bylaw 12.2.4); or
(g) Enters into an agreement with an agent.

42.     The NCAA's own policies seem to contradict the NCAA's purported commitment to the continuing education of student-athletes.   First, earlier policy changes by the NCAA support this conclusion.  For example, prior to 1968, the NCAA ruled that freshmen were banned from participation in all sports; however in 1972, the NCAA ruled that freshmen were allowed to play football and basketball.    Arguments against freshman eligibility include a belief that incoming student-athletes needed a year to adapt to the rigors of college before engaging in the necessary time to practice, play and travel.    Instead, the NCAA deems freshman too valuable (in terms of the revenues that they produce) to keep them off of the football field or basketball court.   Second, the reality of the current NCAA policies focused on "eligibility" further contradicts its purported commitment to education.   Universities invest in academic support services and encourage student athletes in the profitable sports of basketball and football to take easy majors with little to no requirements other than occasionally going to class.  EIS at 223.  James Duderstadt, a former president of the University of Michigan, said that "[w]e bring people, who have no hope of getting a meaningful education, we have them major in eligibility, and we toss them aside when they lose it . . . ."  EIS at 223 n.14.  A 1998 SPORTS ILLUSTRATED article by Rick Reilly focused on Ohio State's All American linebacker Andy Katzenmoyer whose academic eligibility was in jeopardy.   By fall, Katzenmoyer regained eligibility by a grade change in one course (Computer and Visual Arts) and summer session classes in AIDS Awareness, Golf, and Music, which he passed.  After his junior year, Katzenmoyer left Ohio State to enter the NFL draft.  EIS at 225.

43.     In sum, despite promulgating extensive rules and regulations covering the conditions under which student athletes provide services, such as the days, hours, and conditions of practice and games, nowhere in any of its rules and regulations does Defendant NCAA purport to acknowledge or otherwise permit its participating members to comply with the requirements of state and federal wage and hour laws for the payment of services rendered or to

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

be rendered by students athletes in, among other things, playing football on behalf of a participating member.  Indeed, any such wage compensation to a student athlete appears to be expressly prohibited by the rules and regulations of the NCAA.

## PAC-12 CONFERENCE

44.     Defendant PAC-12 CONFERENCE ("PAC-12") is an unincorporated association, with its principal place of business located in this District at 360 Third Street, Third Floor, San Francisco, CA  94107.   The PAC-12 is a multi-sport collegiate athletic conference, and a formal "conference member" of Defendant NCAA's Division I FBS.  In its 2014 IRS Form 990, the PAC-12 identified itself as a tax-exempt organization pursuant to Section 501c(3) of the U.S. Internal Revenue Code, and stated that, for its fiscal year ending June 30, 2014, it obtained gross revenues of $374,019,275.  The PAC-12's "2015-2016 Handbook" states that the PAC-12 was organized for purposes including:  "[t]o provide its members with a jointly governed body for sponsoring, supervising and regulating intercollegiate athletics as a conference member of the National Collegiate Athletics Association ('NCAA') in accordance with the principles, policies, constitution and bylaws of the NCAA" and "[t]o assist its members in funding and promoting their intercollegiate athletics programs."  PAC-12 2015-2016 Handbook at 6.

45.      Despite its status as a tax-exempt organization, the PAC-12 is organized much like a large corporation, including senior officers such as a Chief Marketing Officer, Vice President of  Marketing, Associate Commissioner of Television, Associate Commissioner of Sports Management, and Director of Business Operations.  PAC-12 Commissioner Larry Scott became college sports' first $4.05 million commissioner for 2014-2015, a raise of about $600,000 from the previous year.  *See Pac-12 Falls Behind SEC in Money Even with Commissioner at $4 Million in Salary*, *supra*.  Commissioner Scott's total compensation in 2014-15 included a base salary of $2.55 million, a $12.5 million bonus, $142,000 in other reportable income, and $77,500 in retirement benefits.  *Id*.  This compensation package is competitive with the compensation packages earned by CEOs at major U.S. corporations.  In addition to Scott, eight other current and past PAC-12 executives made more than $300,000 in total compensation in 2014-2015, which included the President of the PAC-12 Networks with compensation of

1    $4.12 million and three senior or executive vice presidents (affiliate sales, sales and finance) with

2    compensation of over $500,000 each.  *Id.*

3    46.    For purposes of collegiate football, the PAC-12's current members are the

4    following 12 institutions:   University of Arizona; Arizona State University; University of

5    California, Berkeley; University of Colorado; University of Oregon; Oregon State University;

6    Stanford University; University of California, Los Angeles; University of Southern California;

7    University of Utah; University of Washington; and Washington State University.  All of the

8    PAC-12's members have Division I Football Bowl Subdivision football programs.

9    47.    Despite promulgating extensive rules and regulations covering the conditions

10   under which student athletes provide services, such as the days, hours, and conditions of practice

11   and games, nowhere in any of its rules and regulations—adopting the rules and regulations of the

12   NCAA—does Defendant PAC-12 purport to acknowledge or otherwise permit its participating

13   members to comply with the requirements of state and federal wage and hour laws for the

14   payment of services rendered or to be rendered by students athletes in, among other things,

15   playing football on behalf of a participating member.  Indeed, any such wage compensation to a

16   student athlete appears to be prohibited by the PAC-12, incorporating, as it does, the rules and

17   regulations of Defendant NCAA.

18   **JOINT EMPLOYMENT**

19   48.    In consideration of the vertical relationship between Defendants NCAA and PAC-

20   12, where the rules and regulations governing student athletes who play football for any of the

21   universities and colleges who are participating members in the NCAA and the PAC-12, are set in

22   the first instance by Defendant NCAA, and then adopted in turn by Defendant PAC-12, for

23   purposes, *inter alia*, of restricting and limiting the compensation which student athletes may

24   receive for their athletic services, Defendants NCAA and PAC-12 are joint employers of the

25   student athletes who play Division I FBS football on behalf of any of the participating member

26   universities and colleges of Defendants NCAA and PAC-12.

27   49.    Traditionally, joint employment in such circumstances may be found where, as

28   here, the employers, *i.e.*, Defendants NCAA and PAC-12, share direct or indirect control over

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

the employee because one employer controls, is controlled by, or is under common control with the other employer.  29 C.F.R. § 791.2.  *See also*, *e.g.*, U.S. Department of Labor, Wage and Hour Division, Administrator's Interpretation No. 2016-1 (January 20, 2016).

50.     As a result of this joint employment relationship, both Defendants NCAA and PAC-12 are liable, individually and jointly, for the payment of wages and other employment benefits due and owing student athletes whose employment is governed by the rules and regulations of the NCAA and the PAC-12.  29 C.F.R. § 791.2.  *See also*, *e.g.*, U.S. Department of Labor, Wage and Hour Division, Administrator's Interpretation No. 2016-1 (January 20, 2016).

**DEFENDANTS' EXERCISE OF CONTROL**

**OVER THE DAILY ACTIVITIES OF STUDENT ATHLETES**

51.     Defendants NCAA and PAC-12 by their rules and regulations exercise strict and exacting control over nearly every aspect of the lives of enrolled student athletes, including Plaintiff and the Class Members, as well as the terms and conditions under which they perform services (*i.e.*, work).    This exercise of control applies to Plaintiff and the Class Members at all times both on-campus and off-campus.    For example, "***all participating student-athletes shall act with honesty and sportsmanship at all times*** so that intercollegiate athletics as a whole, their institutions and they, as individuals, shall represent the honor and dignity of fair play and the generally recognized high standards associated with wholesome competitive sports."   (Emphasis added).  2015-16 NCAA Division I Manual, NCAA Bylaw 10.01.1.  *See also* PAC-12 2015-16 Handbook, Compliance & Enforcement Regulation ("CER") 4-3(b) at 44; *id.*, CER 5-1 at 48.

52.     Defendants NCAA and PAC-12 expressly prohibit prospective and enrolled student athletes, including Plaintiff and the Class Members, from engaging at any time in any ***unethical conduct*** defined in the broadest of terms, including, but not limited to, the following:

> (a)     Refusal to furnish information relevant to an investigation of a possible violation of an NCAA regulation when requested to do so by the NCAA or the individual's institution;
> (b)     Knowing involvement in arranging for fraudulent academic credit or false transcripts for a prospective or an enrolled student-athlete;
> (c)     Knowing involvement in offering or providing a prospective or an enrolled student-athlete an improper inducement or extra benefit or improper

—

financial aid;

(d)     Knowingly furnishing or knowingly influencing others to furnish the NCAA or the individual's institution false or misleading information concerning an individual's involvement in or knowledge of matters relevant to a possible violation of an NCAA regulation;

(e)     Receipt of benefits by an institutional staff member for facilitating or arranging a meeting between a student-athlete and an agent, financial advisor or a representative of an agent or advisor (e.g., a "runner");

(f)     Knowing involvement in providing a banned substance or impermissible supplement to student-athletes, or knowingly providing medications to student-athletes contrary to medical licensure, commonly accepted standards of care in sports medicine practice, or state and federal law.  This provision shall not apply to banned substances for which the student-athlete has received a medical exception per Bylaw 31.2.3.2; however, the substance must be provided in accordance with medical licensure, commonly accepted standards of care and state or federal law;

(g)     Failure to provide complete and accurate information to the NCAA, the NCAA Eligibility Center or an institution's admissions office regarding an individual's academic record (e.g., schools attended, completion of coursework, grades and test scores);

(h)     Fraudulence or misconduct in connection with entrance or placement examinations;

(i)     Engaging in any athletics competition under an assumed name or with intent to otherwise deceive; or

(j)     Failure to provide complete and accurate information to the NCAA, the NCAA Eligibility Center or the institution's athletics department regarding an individual's amateur status.

*Id.,* NCAA Bylaw 10.1. *See also*, PAC-12 2015-16 Handbook, CER 2-1 at 40; *id.*, CER 4-3(b) at 44.

53.     Defendants NCAA and PAC-12 also prohibit enrolled student athletes, including Plaintiff and the Class Members, from **gambling** ("sports wagering") of "any type with any individual or organization on any intercollegiate, amateur or professional team or contest."  *Id.*, NCAA Bylaw 10.02.1.

54.     Defendants NCAA and PAC-12 also **prescribe and monitor the academic performance** of participating student athletes, including Plaintiff and the Class Members, requiring that "[t]o be eligible to represent an institution in intercollegiate athletics competition, a student-athlete shall be enrolled in at least a minimum full-time program of studies, be in good academic standing and maintain progress toward a baccalaureate or equivalent degree."   2015-

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

16 NCAA Division I Manual, NCAA Bylaw 14.01.2.

55.     Defendants NCAA and PAC-12 further prohibit student athletes, including Plaintiff and the Class Members, from *accepting any form of pay from anyone for their athletic services*.   In the strictest of terms, "[a]n individual loses amateur status and thus shall not be eligible for intercollegiate competition in a particular sport if the individual," among other things, does any one of the following:

> (a)     Uses his or her athletics skill (directly or indirectly) for pay in any form in that sport;
> (b)     Accepts a promise of pay even if such pay is to be received following completion of intercollegiate athletics participation;
> (c)     Signs a contract or commitment of any kind to play professional athletics, regardless of its legal enforceability or any consideration received, except as permitted in Bylaw 12.2.5.1;
> (d)     Receives, directly or indirectly, a salary, reimbursement of expenses or any other form of financial assistance from a professional sports organization based on athletic skill or participation, except as permitted by NCAA rules and regulations;
> (e)     Competes on any professional athletics team per Bylaw 12.02.11, even if no pay or remuneration for expenses was received, except as permitted in Bylaw 12.2.3.2.1;
> (f)     After initial full-time collegiate enrollment, enters into a professional draft (see Bylaw 12.2.4); or
> (g)     Enters into an agreement with an agent.

2015-16 NCAA Division I Manual, NCAA Bylaw 12.1.2.

56.     Defendants NCAA and PAC-12 also prohibit student athletes, including Plaintiff and the Class Members, from *accepting any form of financial aid from anyone unless provided in strict compliance with Defendants' rules and regulations*:   "Any student-athlete who receives financial aid other than that permitted by the Association [NCAA] shall not be eligible for intercollegiate athletics."   *Id.*, NCAA Bylaw 15.01.2, page 187.   Further, student athletes, including Plaintiff and the Class Members, may not receive more than the maximum financial aid defined by Defendants as not to exceed the cost of attendance:   "A student-athlete shall not be eligible to participate in intercollegiate athletics if he or she receives financial aid that exceeds the value of the *cost of attendance* as defined in Bylaw 15.02.2.   A student-athlete may receive institutional financial aid based on athletics ability (per Bylaw 15.02.4.2) and any other financial

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

aid up to the value of his or her **cost of attendance**.  (See Bylaws 15.01.06.1, 16.3, 16.4 and 16.12.)"  *Id.*, NCAA Bylaw 15.1.  (Emphasis added).

57.    Defendants NCAA and PAC-12 also condition payment of the permissible financial aid that student athletes, including Plaintiff and the Class Members, may receive upon their  compliance with Defendants' rules and regulations that govern student athletes' conduct both on and off campus:

> Institutional financial aid based in any degree on athletics ability may be reduced or canceled during the period of the award or reduced or not renewed for the following academic year or years of the student-athletes' five year period of eligibility if the recipient:
> (a)    Renders himself or herself ineligible for intercollegiate competition;
> (b)    Fraudulently misrepresents any information on an application, letter of intent or financial aid agreement (see Bylaw 15.3.5.1.2);
> (c)    Engages in serious misconduct warranting substantial disciplinary penalty, as determined by the institution's regular student disciplinary authority;
> (d)    Voluntarily (on his or her own initiative) withdraws from a sport at any time for personal reasons; however, the recipient's financial aid may not be awarded to another student-athlete in the academic year in which the aid was reduced or canceled.  A student-athlete's request for written permission to contact another four-year collegiate institution regarding a possible transfer does not constitute a voluntary withdrawal; or
> (e)    Violates a nonathletically related condition outlined in the financial aid agreement or violates a documented institutional rule or policy (e.g., academics policies or standards, athletics
> department or team rules or policies).

*Id.*, NCAA Bylaw15.3.5.1.  *See also* PAC-12 2015-16 Handbook, Executive Regulation 3 at 27-28.

58.    Defendants NCAA and PAC-12 also prohibit student athletes, including Plaintiff and the Class Members, from receiving any award, benefit or expense allowance in excess of permissible financial aid that Defendants have otherwise defined in their rules and regulations.  More specifically, NCAA Bylaw 16.01.1 expressly provides:  "A student-athlete shall not receive any extra benefit.  Receipt by a student-athlete of an award, benefit or expense allowance not authorized  by  NCAA  legislation  renders  the  student-athlete  ineligible  for  athletics

competition in the sport for which the improper award, benefit or expense was received. " *Id.*, NCAA Bylaw 16.011 at 211.  Indeed, "[i]f the student-athlete receives an extra benefit not authorized by NCAA legislation, the individual is ineligible in all sports." *Id.*

59.    Defendant PAC-12 has also expressly adopted compliance with all of Defendant NCAA's rules and regulations as one of its core organizing principles, and states that it was organized "[to] provide its members with a jointly governed body for sponsoring, supervising and regulating intercollegiate athletics as a conference member of the National Collegiate Athletics Association ('NCAA') *in accordance with the principles, policies, constitution and bylaws of the NCAA*."  PAC-12 2015-16 Handbook, Constitution & Bylaw 1-2(a) at 6. (Emphasis added).

60.    Given the breadth and scope of the rules and regulations of Defendants NCAA and PAC-12, student-athletes, including Plaintiff and the Class Members, are effectively controlled in their daily activities both on and off campus, including: (a) living arrangements; (b) athletic eligibility; (c) permissible compensation; (d) allowable behavior; (e) academic performance; (f) use of alcohol and drugs; and (g) gambling.   If Plaintiff and the Class Members run afoul of Defendants' pervasive rules and regulations, they are immediately faced with Draconian penalties – loss of financial aid and eligibility for sports.  *See, e.g.*, 2015-16 NCAA Division I Manual, NCAA Bylaw 15.3.5.1; PAC-12 2015-16 Handbook, CER 4-4 at 45.

## WAGE AND HOUR VIOLATIONS

61.    As alleged herein, Defendants NCAA and PAC-12 have regulated and controlled and continue to regulate and control the terms and conditions of the employment, including remuneration therefor, of Plaintiff and the other members of the Classes who play football at the universities and colleges that are participating members of said Defendants.

62.    As alleged herein, Defendants NCAA and PAC-12 strictly control and regulate the conduct of Plaintiff and the Class Members and prohibit each of them from: (1) rendering himself ineligible from intercollegiate competition; (2) engaging in serious misconduct warranting substantial disciplinary action; (3) engaging in conduct resulting in criminal charges; (4) abusing team rules as determined by the coaches and/or athletic administrations; (5)

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

voluntarily withdrawing from the sport at any time for any reason; (6) accepting compensation for participating in athletic contests in his sport; and (7) agreeing to be represented by an agent.

63.     Plaintiff and the Class Members are also strictly controlled and regulated in their conduct on and off campus, pursuant to the rules and regulations of Defendants NCAA and PAC-12 concerning permissible daily activities, including training and game schedules, academic schedules, and other collegiate activities.

64.     Defendants NCAA and PAC-12 have during the Class Periods failed to pay adequate compensation or otherwise provide for the compensation of Plaintiff and the Class members for overtime/premium wages dues under the FLSA, 29 U.S.C. §§ 206 and 207, California Labor Code section 510 and applicable California Wage Orders.  Defendants have also failed to pay Plaintiff and the Class members their required minimum wages for all applicable pay periods during the Class Periods as mandated by federal and state law, including 29 U.S.C. § 206(a)(1); California Minimum Wage Order MW-2014; and California Labor Code sections 510, 558, 1194 and 1198.

65.     California Labor Code sections 510 and 1198, California Code of Regulations secitons 11070 and 11090 and IWC Wage Orders Nos. 7-2001 and 9-2001, provide that employees in California shall not be employed more than eight (8) hours in any work day nor more than forty (40) hours in any workweek unless they receive additional compensation beyond their regular wage in amounts specified by law.

66.     The FLSA, 29 U.S.C. § 206(a)(1), which was and is applicable to Plaintiff and members of the FLSA Class during the FLSA Class Period, provides that employees shall not be employed more than forty (40) hours in any workweek unless they receive additional compensation beyond their regular wage in amounts specified by law.

67.     During the California Class Period, the aforementioned Labor Code sections and IWC Wage Orders were applicable to the employment of Plaintiff and the California Class members and provided that any work performed in excess of eight (8) hours a day or more than forty (40) hours per week be compensated at the rate of one and one-half times the regular rate of employees' compensation and during the FLSA Class Period.

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

68.     The actions of Defendants NCAA and PAC-12 requiring employees to work an excessive amount of hours in the absence of overtime pay is in direct violation of California labor law and the FLSA.  Under California Labor Code section 1194(a), all California Class members, including Plaintiff, who received less than the legal overtime compensation applicable to the employee are entitled to recover the unpaid balance of the full amount of overtime compensation, as well as interest, reasonable attorneys' fees and costs of suit.  Under the FLSA, 29 U.S.C. § 216(b), all FLSA Class members, including Plaintiff, who received less than the legal overtime compensation applicable to the employee are entitled to recover the unpaid balance of the full amount of overtime compensation and an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees and costs of suit.

69.     Further, upon the termination or resignation of the employment by Plaintiff and all other California Class members during the Class Period, Defendants NCAA and PAC-12 failed to pay the wages then due and owing, in clear disregard of California Labor Code sections 201 and/or 202.

70.     Moreover, California Labor Code sections 201 and 202 require Defendants to pay all wages due members of the California Class immediately upon discharge.  California Labor Code section 203 provides that, if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, for a period not to exceed thirty (30) days of wages.

71.     Furthermore, despite their knowledge of Plaintiff's and the Class Members' right to receive premium/overtime pay for excess hours worked, Defendants NCAA and PAC-12 violated California Labor Code section 1174(d) by failing to provide or require the use, maintenance or submission of time records by members of the California Class.  Defendants also failed to provide Plaintiff and members of the California Class with accurate semi-monthly itemized wage statements of the total number of hours worked by each, and all applicable hourly rates in effect during the pay period, in violation of California Labor Code section 226.  In so doing, Defendants have not only failed to pay Plaintiff and the California Class the full amount of compensation due, but they have, until now, effectively shielded themselves from the scrutiny

of Plaintiff and the California Class for Defendants' unlawful conduct by concealing the magnitude (the full number of hours worked) and financial impact of their wrongdoing.

72.     Plaintiff and all members of the Class are entitled to unpaid compensation, yet, to date, they have not received such compensation despite the termination of their employment with Defendants NCAA and PAC-12.

73.     More than thirty (30) days have passed since Plaintiff and other California Class Members have left Defendants' employ.

74.     As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, Plaintiff and other California Class Members are entitled to thirty (30) days wages as a penalty under California Labor Code section 203, together with interest thereon and attorneys' fees and costs.

75.     Defendants NCAA and PAC-12 have also under-paid Plaintiff and the Class members during applicable pay periods of their employment by failing to pay them overtime wages and required minimum wages due under the California Labor Code and the FLSA as hereinabove alleged.

76.     As a consequence of Defendants' unlawful conduct in failing to pay Plaintiff and the Class Members all wages due and owing during applicable pay periods of their employment, Plaintiff and the California Class Members are entitled to the penalties detailed in section 558 of the California Labor Code.

77.     Defendants NCAA and PAC-12 have also untimely paid Plaintiff and the California Class Members during applicable pay periods of their employment by failing to timely pay them overtime wage and required minimum wages due under the California Labor Code and the FLSA as hereinabove alleged.

78.     As a consequence of Defendants' unlawful conduct in failing to timely pay Plaintiff and the California Class Members all wages due and owing during applicable pay periods of their employment, Plaintiff and the California Class Members are entitled to the penalties detailed in section 2699 of the California Labor Code.

79.     As a direct and proximate result of Defendants' unlawful conduct, as set forth

herein, Plaintiff and FLSA Class Members and California Class Members, and/or Subclass Members thereof, have sustained damages, as alleged above, including loss of earnings for hours of overtime worked on behalf of Defendants NCAA and PAC-12, and required minimum wage payments, in an amount to be established at trial.  As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and many California Class Members, and/or Sub-class Members thereof, are entitled to recover "waiting time" penalties/wages, pursuant to California Labor Code section 203; and penalties for failure to provide semi-monthly statements of hours worked and all applicable hourly rates, pursuant to California Labor Code section 203; penalties for failure to provide semi-monthly statements of hours worked and all applicable hourly rates, pursuant to California Labor Code section 226; penalties for underpaying Plaintiff and the California Class Members all wages due for applicable pay periods; and penalties for untimely paying Plaintiff and the California Class Members all wages due for applicable pay periods in an amount to be established at trial.  As a further direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and Class Members, and/or Subclass members thereof, are entitled to recover attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b), California Labor Code sections 218.5 and 1194 and/or California Civil Code section 1021.5, among other authorities.

80.    In addition to asserting class/collective action claims, pursuant to California Business and Professions Code section 17204, Plaintiff asserts claims as a private attorney general on behalf of the general public.  Plaintiff seeks to enjoin Defendants NCAA and PAC-12 from engaging in the unfair, unlawful and/or deceptive business practices alleged in this Complaint, and to require Defendants to make restitution of all monies wrongfully obtained by them through their unfair, unlawful and/or deceptive business practices.  A private attorney general (representative) action is necessary and appropriate because Defendants have engaged in the wrongful acts alleged herein as a general business practice.

**FIRST CLAIM FOR RELIEF**
**UNLAWFUL FAILURE TO PAY THE REGULAR MINIMUM WAGE**
**(FLSA Class)**

81.    Plaintiff incorporates in this claim for relief each and every allegation of the

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1   preceding paragraphs 1 through 79 with the same force and effect as though fully set forth
2   herein.

3      82.      Pursuant to Section 6 of the FLSA, 29 U.S.C. § 206, Plaintiff and all members of
4   the FLSA Class are entitled to receive a minimum wage to be paid for all hours worked.

5      83.      Effective July 24, 2009, and at all times thereafter, the federal minimum wage
6   was and is $7.25 per hour.  Where state and local laws establish higher minimum wage rates,
7   payment of the FLSA-prescribed federal minimum wage does not excuse an employer from
8   compliance with higher state or local minimum wage requirements.  29 U.S.C. § 218(a).

9      84.      At all times during the FLSA Class Period, Plaintiff and the FLSA Class
10  Members were nonexempt workers entitled to the protections of Section 6 of the FLSA, 29
11  U.S.C. § 206.  For purposes of calculating the minimum wage, in no case may the earnings of an
12  employee be averaged over a period longer than a single workweek.  *See* 29 C.F.R. § 778.05;
13  *Olson v. Superior Pontiac-GMC,* 765 F.2d 1570, 1578-79, *modified*, 776 F.2d 265 (11th Cir.
14  1985).  During the course of Plaintiff's employment, and the employment of all others similarly
15  situated, Defendants NCAA and PAC-12, and each of them, failed to compensate Plaintiff, and
16  all others similarly situated, at the minimum wage for each hour worked in all applicable pay
17  periods, as required by the aforementioned statutes.

18     85.      As a direct, proximate and foreseeable result of the unlawful conduct of
19  Defendants alleged herein, Plaintiff, and all others similarly situated, have been damaged in an
20  amount according to proof at time of trial.

21
22            **SECOND CLAIM FOR RELIEF**
              **UNLAWFUL FAILURE TO PAY THE REGULAR MINIMUM WAGE**
              **(California Class)**
23            **(California Wage Sub-Class)**

24     86.      Plaintiff incorporates in this claim for relief each and every allegation of the
25  preceding paragraphs 1 through 79 above with the same force and effect as though fully set forth
26  herein.

27     87.      Pursuant to California Minimum Wage Order MW-2014, Defendants were
28  required to compensate Plaintiff and all other similarly situated California Wage Sub-Class

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Members at a minimum wage of at least $8.00 per hour for work performed between 2008 and July 1, 2014, $9.00 per hour from July 1, 2014 through December 31, 2015, and $10.00 per hour effective January 1, 2016.

88.     Plaintiff and the California Wage Sub-Class Members were nonexempt workers entitled to the protections of California Minimum Wage Order MW-2014.  For purposes of calculating the minimum wage, in no case may the earnings of an employee be averaged over a period longer than a single workweek.  *See* 29 C.F.R. § 778.05; *Olson v. Superior Pontiac-GMC*, 765 F.2d 1570, 1578-79, *modified*, 776 F.2d 265 (11th Cir. 1985).  Further, in California when assessing whether or not an employer has satisfied its minimum wage obligations, the wages earned in one pay period may not be attributed to or averaged with another payroll period. *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 665 (2014).    During the course of Plaintiff's employment, and the employment of the California Wage Sub-Class Members, Defendants NCAA and PAC-12, and each of them, failed to compensate Plaintiff and the California Wage Sub-Class Members at the minimum wage for each hour worked in all applicable pay periods, as required by the aforementioned regulation.

89.     As a direct, proximate and foreseeable result of the unlawful conduct of Defendants, as alleged, Plaintiff and the California Wage Sub-Class Members have been damaged in an amount according to proof at time of trial.

90.     Defendants' conduct described herein violates California Labor Code sections 510, 558, 1194, and 1198. Therefore, Plaintiff and the California Wage Sub-Class Members are entitled to recover the unpaid balance of wages owed, penalties, plus interest, and reasonable attorneys' fees and costs of suit.  Furthermore, pursuant to California Labor Code section 1194.2, Plaintiff and the California Class Members are entitled to additional liquidated damages in an amount equal to the unpaid regular time wages owed them.

### THIRD CLAIM FOR RELIEF
**UNLAWFUL FAILURE TO PAY OVERTIME**
**(FLSA Class)**

91.     Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79 above with the same force and effect as though fully set forth

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1    herein.

2        92.     At all times during the FLSA Class Period, Defendant NCAA has been, and is,

3   and employer engaged in commerce as defined under 29 U.S.C. § 203(b) and (d).  As such,

4   Defendant NCAA controlled and regulated the employment of Plaintiff and the FLSA Class

5   Members as football players at various universities and colleges throughout the United States

6   which are and were participating members of the NCAA.  At all times during the FLSA Class

7   Period, Defendant NCAA has been an "[e]nterprise engaged in commerce or in the production of

8   goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

9        93.     Plaintiff is informed and believes, and thereon alleges, that Defendant NCAA has

10   required, or requires, the FLSA Class Members as part of their employment to work without

11   additional compensation, such as overtime, in excess of the forty (40) hours per week maximum

12   under 29 U.S.C. § 207(a)(1).  That Section provides as follows:

13

14        Except as otherwise provided in this section, no employer shall employ any of his

15        employees . . . for a workweek longer than forty hours unless such employee

       receives compensation for his employment in excess of the hours above specified

16        at a rate not less than one and one-half times the regular rate at which he is

       employed.

17

18        94.     Indeed, in the performance of their duties for Defendant NCAA, members of the

19   FLSA Class often did work over forty (40) hours per week, yet did not receive overtime

20   compensation for the work, labor and services they provided to Defendant NCAA, as required by

21   the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be

22   proven at trial.

23        95.     Plaintiff proposes under appropriate proceedings to have such FLSA Class

24   Members aggrieved by Defendant NCAA's unlawful conduct notified of the pendency of this

25   action and join this action as plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents

26   to joinder with the Court.

       96.     Defendant NCAA's violations of the FLSA were willful.

27        97.     As a result of the foregoing, Plaintiff seeks judgment against Defendant NCAA

28   on his own behalf; and on behalf of those FLSA Class Members similarly situated who file

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

written consents to joinder in this action, for all unpaid wages, including overtime wages owed by Defendant NCAA to Plaintiff and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided by 29 U.S.C. § 216(b).

**FOURTH CLAIM FOR RELIEF**
**UNLAWFUL FAILURE TO PAY OVERTIME**
**(California Class)**
**(California Wage Sub-Class)**

98.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79 above with the same force and effect as though fully set forth herein.

99.    At all times during the California Class Period, the applicable California Labor, Code of Regulations and IWC Wage Orders referenced herein applied to Plaintiff's and the California Wage Sub-Class Members' employment as regulated and controlled by Defendants NCAA and PAC-12.

100.    During the Class Period, Plaintiff and the California Wage Sub-Class Members worked in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek.  The precise number of overtime hours will be proven at trial.

101.    During the Class Period, Plaintiff and the Wage Sub-California Class Members worked on the seventh day of certain workweeks and were not paid overtime wages for the hours which they worked on the seventh day.  The precise number of overtime hours will be proven at trial.

102.    During said time period, Defendants failed to compensate Plaintiff and the California Wage Sub-Class Members for some and/or all of the overtime wages earned in violation of applicable Wage Order(s) and the provisions of the California Labor Code.

103.    At all times during the California Class Period, Defendants were of, and were under a duty to comply with, the overtime provisions of the California Labor Code, including, but not limited to, the following:

a.    Labor Code § 510:  "Any work in excess of eight hours in one workday

and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee . . . ."  (Effective at all times herein relevant).

b.      Labor Code § 1194:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  (Effective at all times herein relevant).

c.      Labor Code § 1198:  "The maximum hours of work and the standards conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  (Effective at all times herein relevant).

104.    By failing to compensate Plaintiff and the California Wage Sub-Class Members for overtime wages earned, Defendants violated those California Labor Code provisions cited herein, as well as various Industrial Welfare Commission Wage Orders.

105.    Plaintiff, individually and on behalf of all other California Wage Sub-Class Members, requests payment of overtime compensation according to proof, penalty wages, interest and attorneys' fees and costs pursuant to the California Labor Code, as well as the assessment of any other statutory penalties against Defendants in a sum as provided by the California Labor Code and/or otherwise provided by law.

**FIFTH CLAIM FOR RELIEF**
**UNLAWFUL FAILURE TO PROVIDE ITEMIZED WAGE STATEMENTS**
**(California Class)**
**(California Wage Statement/Penalties Sub-Class)**

106.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79 above with the same force and effect as though fully set forth herein.

107.    California Labor Code section 226(a) provides:
Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees either as a detachable part of the check, draft or voucher paying the employee's wages, or separately when wages are paid by

personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . (3) the number of piece-rate units earned an any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . ., and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .

108.    The IWC Wage Orders also establish this requirement in Section 7(B) thereof, Title 8 of the California Code of Regulations sections 11010, *et seq*.

109.    Moreover, California Labor Code section 226(e)(1) provides:\

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

110.    Finally, California Labor Code section 1174 provides:

Every person employing labor in this state shall: . . . (d) Keep, at a central location in the state . . . payroll records showing the hours worked daily by and the wages paid to . . . employees . . . . These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years.

111.    Plaintiff seeks to recover actual damages, costs and attorney's fees under these provisions on behalf of himself and the California Wage Statement/Penalties Sub-Class.

112.    Defendants NCAA and PAC-12 failed to provide timely and accurate itemized wage statements to Plaintiff and the California Wage Statement/Penalties Sub-Class in accordance with California Labor Code section 226(a) and the IWC Wage Orders.  None of the statements, or any writings, provided by Defendants have purported to accurately reflect actual gross wages earned, net wages earned, or the appropriate deductions of such Class Members.

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

113.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the California Wage Statement/Penalties Sub-Class Members have sustained damages in an amount to be established at trial, and are entitled to recover attorney's fees and costs of suit.

**SIXTH CLAIM FOR RELIEF**
**UNLAWFUL FAILURE TO PAY WAGES ON TERMINATION**
**(California Class)**
**(California Waiting Time/Penalties Sub-Class)**

114.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79, and 86-105, above, with the same force and effect as though fully set forth herein.

115.    California Labor Code section 203 provides that:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereby is commenced; but the wages shall not continue for more than 30 days.

116.    Plaintiff and other California Waiting Time/Penalties Sub-Class Members were employed by Defendants NCAA and PAC-12 during the class period and were thereafter terminated or resigned from their positions, yet they were not paid all wages due and owing, including, but not limited to, premium/overtime wages, upon said termination or within seventy-two (72) hours of said resignation and/or termination of employment therefrom.  Said non-payment was the direct and proximate result of a willful refusal to do so by Defendants.

117.    More than thirty (30) days has elapsed since Plaintiff and the California Waiting Time/Penalties Sub-Class Members were terminated and/or resigned from Defendants' employ.

118.    As a direct and proximate result of Defendants' willful conduct in failing to pay said Class Members for all hours worked, Plaintiff and the California Waiting Time/Penalties Sub-Class Members are entitled to recover "waiting time" penalties of thirty days' wages pursuant to California Labor Code section 203, in an amount to be established at trial, together

1  with interest thereon and attorney's fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**UNLAWFUL UNDERPAYMENT OF WAGES**
**(California Class)**
**(California Underpayment Sub-Class)**

119.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79, and 86-105, above, with the same force and effect as though fully set forth herein.

120.    At all times during the California Class Period, the applicable California Labor, Code of Regulations and IWC Wage Orders referenced herein applied to Plaintiff's and the California Underpayment Sub-Class Members' employment as regulated and controlled by Defendants NCAA and PAC-12.

121.    During the Class Period, Defendants NCAA and PAC-12 underpaid Plaintiff and California Underpayment Sub-Class Members during applicable pay periods by failing to pay them overtime wages and required minimum wages due under the California Labor Code and the FLSA as hereinabove alleged.

122.    Section 558(a)(1) of the California Labor Code provides that for the initial violation by Defendants NCAA and PAC-12 of underpaying Plaintiff and the California Underpayment Sub-Class Members in a pay period, Defendants (or either of them) shall pay to Plaintiff and the California Underpayment Sub-Class Members fifty dollars ($50) as a civil penalty for each underpaid employee for each pay period to which the employee was underpaid in addition to any amount sufficient to recover underpaid wages;

123.    Section 558(a)(2) of the California Labor Code provides that for each subsequent violation by Defendant NCAA and PAC-12 of underpaying Plaintiff and the California Underpayment Sub-Class Members in a pay period, Defendants (or either of them) shall pay to Plaintiff and the California Underpayment Sub-Class Members one-hundred dollars ($100) as a civil penalty for each underpaid employee for each pay period to which the employee was underpaid in addition to any amount sufficient to recover underpaid wages;

124.    By failing to fully compensate Plaintiff and the Underpayment Sub-California

Class Members for the wages that they earned, Defendants NCAA and PAC-12 violated the California Labor Code provisions cited hereinabove, as well as various Industrial Welfare Commission Wage Orders.

**EIGHTH CLAIM FOR RELIEF**
**UNLAWFUL UNTIMELY PAYMENT OF WAGES**
**(California Class)**
**(California Untimely Payment/Penalties Sub-Class)**

125.     Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 79 and 86-105, above, with the same force and effect as though fully set forth herein.

126.     At all times during the California Class Period, the applicable California Labor, Code of Regulations and IWC Wage Orders referenced herein applied to Plaintiff's and the California Untimely Payment/Penalties Sub-Class Members' employment as regulated and controlled by Defendants NCAA and PAC-12.

127.     During the Class Period, Defendants NCAA and PAC-12 failed to timely pay Plaintiff and the Untimely Payment/Penalties Sub-California Class Members during applicable pay periods by failing to comply with applicable time requirements for the payment of wages established for overtime wages and required minimum wages which were due to be paid under the California Labor Code as hereinabove alleged.

128.     Under the California Labor Code, earned wages are required to be timely paid.  In particular, Section 204(a) of the California Labor Code provides for the payment of regular wages as follows:

> All wages, other than those mentioned in Section 201 [wages due upon discharge or layoff], 201.3 [temporary service employment], 202 [wages due upon resignation], 204.1 [commission wages of vehicle dealer employees], or 204.2 [executive, administrative, and professional employees], earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular pay days.  Labor performed between the 1st and 15th days, inclusive, of any calendar month, shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

129.    In the case of the payment of overtime wages, section 204(b)(1) further provides: "Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period."

130.    As a general matter, "[t]he requirements of this section [204] shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven days following the close of the payroll period."  California Labor Code § 204(d).

131.    Defendants NCAA and PAC-12 during the Class Period did not pay Plaintiff and the California Untimely Payment/Penalties Sub-Class Members regular wages in compliance with the time requirements of California Labor Code section 204(a), and did not pay Plaintiff and the California Untimely Payment/Penalties Sub-Class Members overtime wages in compliance with the time requirements of California Labor Code section 204(d).

**NINTH CLAIM FOR RELIEF**
**PRIVATE ATTORNEYS GENERAL ACT**
**(California Class)**
**(California Untimely Payment/Penalties Sub-Class)**

132.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 80, 86-90 and 98-131, above, with the same force and effect as though fully set forth herein.

133.    Plaintiff and the California Untimely Payment/Penalties Sub-Class Members are aggrieved employed as defined in California Labor Code section 2699(a)

134.    Defendants NCAA and PAC-12 committed violations of the California Labor Code against Plaintiff and the California Untimely Payment/Penalties Sub-Class Members by, among other things, failing to pay regular wages and overtime wages in compliance with the time requirements of California Labor Code section 204 as previously alleged.

135.    Labor Code section 2699(f) provides:

For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows:
(1)  If, at the time of the alleged violation, the person does not employ one

or more employees, the civil penalty is five hundred dollars ($500).

      (2)  If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

136.    Pursuant to Labor Code section 2699.3(a), prior to the filing of this complaint, Plaintiff on behalf of himself and the California Untimely Payment/Penalties Sub-Class Members gave written notice by online filing on July 20, 2016 with the Labor and Workforce Development Agency ("LWDA"), and by certified mail postmarked July 11, 2016 to the LWDA and Defendants NCAA and PAC-12 of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.  The required filing fee of $75 was duly paid by Plaintiff to LWDA.

137.    The LWDA did not provide notice within 65 calendar days of the July 20, 2016 online filing of the foregoing written notice that it intended to investigate the alleged violations.

138.    Plaintiff on behalf of himself and the California Class Members requests that Defendants NCAA and PAC-12 be ordered to pay all applicable penalties as authorized by California Labor Code section 2699.

### TENTH CLAIM FOR RELIEF
**UNFAIR BUSINESS PRACTICES**
**(California Class)**
**(California Unfair Practices Sub-Class)**

139.    Plaintiff incorporates in this claim for relief each and every allegation of the preceding paragraphs 1 through 138, above, with the same force and effect as though fully set forth herein.

140.    Plaintiff further brings this claim for relief seeking equitable and statutory relief to stop the misconduct of Defendants NCAA and PAC-12, as complained of herein, and to seek restitution from Defendants of the amounts they have acquired through the unfair, unlawful and fraudulent business practices described herein.

141.    California Labor Code section 90.5(a) articulates the public policy of this State to vigorously enforce minimum labor standards, including the requirement to pay overtime.

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Through the wrongful and illegal conduct alleged herein, Defendants have acted contrary to the public policy of this State.

142.    As a result of Defendants' violations of the California Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200, *et seq*., they have unjustly enriched themselves at the expense of Plaintiff, the members of the California Unfair Practices Sub-Class, and the general public.

143.    To prevent this unjust enrichment, Defendants NCAA and PAC-12 should be required to disgorge their illegal gains and should be required to make restitution to the members of the California Unfair Practices Sub-Class.

144.    Plaintiff and the members of the California Unfair Practices Sub-Class also request that this Court enter such orders or judgment as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided in the UCL, California Business & Professions Code § 17203, and for such other relief as set forth below.

145.    Plaintiff is a "person" within the meaning of California Business & Professions Code section 17204 and has standing to bring this claim for injunctive and equitable relief.

146.    Injunctive relief is necessary to prevent Defendants NCAA and PAC-12 from continuing to engage in unfair business practices, as alleged herein.  Defendants and persons acting in concert with them, have done, or are now doing, and will continue to do or cause to be done, the above-described illegal acts unless restrained or enjoined by the Court.

147.    The conduct of Defendants NCAA and PAC-12 and their agents, as alleged herein, has been and continues to be deleterious to Plaintiff, the members of the California Unfair Practices Sub-Class, and the general public.  By this action, Plaintiff seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure section 1021.5.

148.    Pursuant to California Business & Professions Code section 17203, Plaintiff, on behalf of himself and all current and former members of the California Unfair Practices Sub-Class, requests injunctive relief, restitution and/or disgorgement of all sums obtained by

Defendants in violation of California Business & Professions Code sections 17200, *et seq*.

149.    The conduct of Defendants, as alleged herein, constitutes an unfair, unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code sections 17200-17208.   Specifically, Defendants conduct business activities while failing to comply with the legal mandates cited herein.

### RELIEF SOUGHT

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for judgment and the following specific relief against Defendants NCAA and the PAC-12 as follows:

A.    That the Court declare, adjudge and decree that this action is a proper class/collective action and certify the proposed FLSA Class, the California Class and all other appropriate subclasses under Fed. R. Civ. P. 23 and/or 29 U.S.C. § 216;

B.    That the Court declare, adjudge and decree that Plaintiff and his counsel are appointed to represent the FLSA Class, the California Class and/or any other appropriate subclasses under Fed. R. Civ. P. 23 and/or 29 U.S.C. § 216;

C.    That the Court declare, adjudge and decree that Plaintiff and the FLSA Class Members were jointly employed by Defendant NCAA, and that Plaintiff and the California Class Members were jointly employed by Defendants NCAA and PAC-12.

D.    That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 willfully violated the overtime provisions of the FLSA, the California Labor Code and the Industrial Wage Commission Orders to Plaintiff and the Classes;

E.    That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 willfully violated their legal duties to pay overtime under the FLSA, the California Labor Code and the IWC Wage Orders;

F.    That the Court declare, adjudge and decree that: (a) Plaintiff and the FLSA Class Members were at all times during the Class Periods, and are, entitled to be paid overtime for work beyond forty (40) hours in a week; and (b) the amounts to which Plaintiff and the FLSA Class Members are entitled is to be doubled as liquidated damages and awarded thereto, pursuant to 29 U.S.C. § 216(b);

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

G.      That the Court declare, adjudge and decree that: (a) Plaintiff and the California Wage Sub-Class Members were at all times during the Class Periods, and are, entitled to be paid for overtime work beyond eight (8) hours in a day and forty (40) hours in a week and were entitled to be paid additional premium pay for a seventh consecutive day of work;

H.      That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 violated their legal duties to pay Plaintiff and the FLSA Class and California Wage Sub-Class Members required minimum wage payments under the FLSA, the California Labor Code and the IWC Wage Orders;

I.      That the Court declare, adjudge and decree that the amounts to which Plaintiff and the FLSA Class Members are entitled to for required minimum wage payments be doubled as liquidated damages and awarded thereto, pursuant to 29 U.S.C. § 216(b);

J.      That the Court declare, adjudge and decree that the amounts to which Plaintiff and the California Wage Sub-Class Members are entitled to for required minimum wage payments be doubled as liquidated damages and awarded thereto, pursuant to California Labor section 1194.2;

K.      That the Court declare, adjudge and decree that for the initial violation of underpaying Plaintiff and the California Underpayment Sub-Class Members in a pay period Defendants NCAA and PAC-12 shall pay to Plaintiff and the California Class Members fifty dollars ($50) as a civil penalty for each underpaid employee for each pay period to which the employee was underpaid in addition to any amount sufficient to recover underpaid wages, pursuant to California Labor Code section 558(a)(1);

L.      That the Court declare, adjudge and decree that for each subsequent violation of underpaying Plaintiff and the California Underpayment Sub-Class Members in a pay period Defendants NCAA and PAC-12 shall pay to Plaintiff and the appropriate California Sub-Class Members one-hundred dollars ($100) as a civil penalty for each underpaid employee for each pay period to which the employee was underpaid in addition to any amount sufficient to recover underpaid wages, pursuant to California Labor Code section 558(a)(2);

M.      That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 violated the record keeping provisions of California Labor Code sections 226(a) and 1174(d) and

section 7 of the IWC Wage Orders as to Plaintiff and the California Wage Statement/Penalties Sub-Class, and willfully failed to provide accurate semi-monthly itemized wage statements thereto;

N.     That the Court, upon finding that Defendants NCAA and PAC-12 violated the record keeping provisions of California Labor Code sections 226(a) and 1174(d) and section 7 of the IWC Wage Orders as to Plaintiff and the California Wage Statement/Penalties Sub-Class, and willfully failed to provide accurate semi-monthly itemized wage statements thereto, further order Defendants to pay as to Plaintiff and each California Wage Statement/Penalties Sub-Class Member the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), separately to Plaintiff and each California Wage Statement/Penalties Sub-Class Member;

O.     That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 violated California Labor Code section 203 by willfully failing to pay all compensation owed at the time of termination of the employment of Plaintiff and other terminated California Waiting Time/Penalties Sub-Class Members;

P.     That the Court declare, adjudge and decree that Defendants NCAA and PAC-12, by failing to timely pay wages to Plaintiff and the California Untimely Payment/Penalties Sub-Class Members in accordance with California Labor Code section 204 be ordered to pay all applicable penalties as authorized by California Labor Code section 2699.

Q.     That the Court declare, adjudge and decree that Defendants NCAA and PAC-12 violated California Business & Professions Code sections 17200, *et seq.* by failing to pay Plaintiff and the California Unfair Practices Sub-Class Members overtime compensation, failing to pay Plaintiff and the California Unfair Practices Sub-Class Members the required minimum wage payments, failing to pay Plaintiff and California Unfair Practices Sub-Class Members all wages due on termination, failing to provide Plaintiff and California Unfair Practices Sub-Class Members with accurate itemized wage statements, and/or by violating other provisions of the California Labor Code and the FLSA;

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1      R.      That the Court make an award to Plaintiff, the FLSA Class and the California

2  Wage Sub-Class of damages and/or restitution for the amount of unpaid overtime compensation

3  and required minimum wage payments, including interest thereto, and penalties in an amount to

4  be proven at trial;

5      S.      That the Court order Defendants NCAA and PAC-12 to pay restitution to Plaintiff

6  and the California Unfair Practices Sub-Class Members due to Defendants' unlawful activities,

7  pursuant to California Business & Professions Code sections 17200-17208;

8      T.      That the Court further enjoin Defendants NCAA and PAC-12, ordering them to

9  cease and desist from unlawful activities in violation of California Business & Professions Code

10  sections 17200, *et seq*.;

11      U.      For interest on the amounts of any and all economic losses, at the highest

12  prevailing legal rate;

13      V.      For reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b), California Labor

14  Code sections 218.5 and 1194, California Civil Code section 1021.5, and/or California

15  Government Code section 12965(b);

16      W.     For an accounting to determine all monies wrongfully obtained and held by

17  Defendants; and

18      X.      For costs of suit and any and all such other relief as the Court deems just and

19  proper.

20                                  **JURY DEMAND**

21      Plaintiff and the Classes hereby demand trial by jury on all issues triable of right by jury.

22  DATED:  September 26, 2016          WOLF HALDENSTEIN ADLER

23                             FREEMAN & HERZ LLP

24                             */s/ Betsy C. Manifold*

25                             BETSY C. MANIFOLD

26                             BETSY C. MANIFOLD

27                             RACHELE R. RICKERT
                              MARISA C. LIVESAY

28                             BRITTANY N. DEJONG
                           750 B Street, Suite 2770

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1

2

San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599

3

4

5

6

7

8

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
JEFFREY G. SMITH (133113)
MARK C. RIFKIN
270 Madison Ave.
10th Floor
New York, NY  10016
Telephone: (212) 545-4762
Facsimile: (212) 545-4653

9

10

11

12

13

14

15

THE LAW OFFICES OF JOHN M. KELSON
JOHN M. KELSON (75462)
483 Ninth Street, Suite 200
Oakland, CA  94607
Telephone:  (510) 465-1326
Facsimile:   (510) 465-0871
JERRY K. CIMMET (33731)
Attorney at Law
177 Bovet Road, Suite 600
San Mateo, CA  94402
Telephone:  (650) 866-4700

16

17

Attorneys for Plaintiff LAMAR DAWSON
and the Classes

18

19

20

21

22

23

24

25

26

27

28

NCAA:23350.v2

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

- 44 -